IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **J&J SPORTS PRODUCTIONS, INC.,** | \* |
| Plaintiff, | \* |
| v. | \* Case No. RWT 11-cv-1597 |
| **TAMMY P. ROYSTER,** *et al.***,** | \* |
| Defendants. | \* |

## MEMORANDUM OPINION

Before this Court is a Motion for Judgment by Default filed by Plaintiff J&J Sports Productions, Inc. For the reasons stated below, the motion will be granted.

## BACKGROUND

On June 10, 2011, Plaintiff J&J Sports Productions, Inc. ("J&J Sports") filed a Complaint against Defendants Tammy P. Royster and John R. Royster. ECF No. 1. J&J Sports alleges that the Roysters are liable under two statutes, 47 U.S.C. § 605 and 47 U.S.C. § 553, for unlawfully intercepting and exhibiting the television broadcast of a boxing match between Manny Pacquiao and Ricky Hatton on May 2, 2009. ECF No. 1. The Complaint also includes a count of conversion, and it seeks $100,000 in damages under 47 U.S.C. § 605, $50,000 in damages under 47 U.S.C. § 553, compensatory damages for conversion, and attorneys' fees and costs. ECF No. 1.

J&J Sports enjoyed "the exclusive nationwide television distribution rights" to the May 2, 2009 match, all of the undercard fights, and the television commentary, and it never granted a commercial license to the Roysters to broadcast the fight. ECF No. 1. The Complaint avers that the Roysters, in connection with an entity known as Nothing But a Party Production LLC, trading as Marygolds or Marygold Family Event Center, intercepted the broadcast of the fight and showed it on five televisions at the Marygold Family Event Center at 8827 Annapolis Road,

Lanham, Maryland on May 2, 2009. ECF Nos. 1, 1-1. According to the affidavit of an investigator named Jauqine Tantillo, who paid a $40.00 cover charge to watch the May 2, 2009 fight at this location, the capacity of the establishment was approximately 200 people, and there were, over the course of the nine minutes that she was there, up to 62 patrons at the event. ECF No. 1-1.

J&J Sports effected service of process on John Royster on June 14, 2011, ECF No. 5, and on Tammy Royster on September 24, 2011, ECF No. 7. Neither Defendant responded to the Complaint, and on September 21, 2011 and November 4, 2011, J&J Sports moved for the Clerk to enter default against John and Tammy Royster, respectively, under Federal Rule of Civil Procedure 55. ECF Nos. 6, 8. The Clerk entered default against John Royster on December 27, 2011, ECF No. 9, and against Tammy Royster on January 3, 2012, ECF No. 10.

On March 22, 2012, J&J Sports filed a Motion for Judgment by Default against the Roysters under Federal Rule of Civil Procedure 55, seeking $100,000 in damages under 47 U.S.C. § 605, $50,000 in damages under 47 U.S.C. § 553, and $1,500 in damages for conversion. ECF No. 11. In support of its motion, J&J Sports submitted a Memorandum of Points and Authorities, the Tantillo affidavit that had been previously submitted with the Complaint, and two bare-bones affidavits by J&J Sports President Joseph Gagliardi. ECF No. 11. On January 14, 2013, this Court denied the motion without prejudice because of the Plaintiff's failure to adequately support its motion. ECF No. 12.

On June 12, 2013, J&J Sports filed a second Motion for Judgment by Default, this time including a more thorough memorandum, a declaration by Plaintiff's counsel, a more extensive affidavit by J&J Sports President Gagliardi, and a number of other supporting documents. ECF No. 13. This motion seeks $110,000 in damages under 47 U.S.C. § 605, $2,000 in damages for conversion, and the recovery of costs and attorneys' fees under 47 U.S.C. § 605. ECF No. 13.

On January 30, 2014, this Court mailed a letter to John and Tammy Royster, informing them that default had been entered against them in this case, and urging them, should they choose to dispute the entries of default or the amount sought by J&J Sports in its second Motion for Judgment by Default, to do so within twenty-one days of January 30, 2014. ECF No. 14. As of the date of this opinion, neither Defendant has filed anything in this case.

## STANDARD OF REVIEW

While the Clerk of this Court has entered default against the Defendants pursuant to Federal Rule of Civil Procedure 55, "[a] defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *J&J Sports Prods., Inc. v. Melgar*, PJM 11-3339, 2012 WL 1852270, *1 (D. Md. May 17, 2012) (citing *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011)). And although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Id.* at 422. In addition, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (internal citation omitted). "While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *J&J Sports Prods., Inc. v. Frank Little Enterprises, LLC*, DKC 12-0997, 2012 WL 6019366, *2 (D. Md. Nov. 30, 2012) (quoting *Adkins*, 180 F. Supp. 2d at 17).

**ANALYSIS**

Although the Plaintiff's Complaint seeks damages under two statutes, 47 U.S.C. § 605 and 47 U.S.C. § 553, its second Motion for Judgment by Default acknowledges that when faced with a claim like the Plaintiff's, "the Maryland Courts have only awarded recovery under one statute, and thus Plaintiff seeks recovery under 47 U.S.C. § 605." ECF No. 13-2 at 4; *see also Melgar*, 2012 WL 1852270 at *2 ("Plaintiffs, however, cannot recover under both [47 U.S.C. § 605 and 47 U.S.C. § 553] for the same conduct, so courts typically grant recovery under only § 605, as it provides for greater recovery."). Accordingly, this Court will not consider an award of damages under 47 U.S.C. § 553.

In addition to damages under 47 U.S.C. § 605, the second Motion for Judgment by Default seeks $2,000 in damages for conversion, asserting that this is "the amount Defendants would have had to pay to broadcast the [boxing match] lawfully." ECF No. 13-2 at 15. However, because a damages award under 47 U.S.C. § 605 in conjunction with an award for conversion "would result in double-recovery," J&J Sports is barred from recovering conversion damages here. *Melgar*, 2012 WL 1852270 at *2; *J & J Sports Prods., Inc. v. Castro Corp.*, 11-CV-00188-AW, 2011 WL 5244440, *3 (D. Md. Nov. 1, 2011) ("Courts have . . . not allowed recovery for claims of conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery.").

In its second Motion for Judgment by Default, J&J Sports seeks $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and $100,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). For the reasons stated below, J&J Sports will be awarded $2,480 in statutory damages and $9,920 in enhanced damages, for a total of $12,400. The Plaintiff will also be granted leave to file a new motion for attorneys' fees and costs.

## A. Statutory Damages

Judge Nickerson described the 47 U.S.C. § 605(e)(3)(C)(i)(II) statutory damages analysis in *J&J Sports Prods., Inc. v. Quattrocche*, WMN-09-CV-3420, 2010 WL 2302353 (D. Md. June 7, 2010), a case with similar facts to this one. He explained:

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising its discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.,* Civ. No. 109–00590, 2010 WL 1790973, at * 5 (E.D.Va. April 12, 2010) (patrons present); *Admiral's Anchor,* 172 F.Supp.2d at 812 (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.,* 232 F.Supp.2d 679, 681 (S.D.W.Va.2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *291 Bar & Lounge,* 648 F.Supp.2d at 474. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. *Id.* The other approach to calculating damages is to award a flat sum per violation. *J.R.'Z Neighborhood Sports Grille,* 2010 WL 1838432, at *1 ($5000); *Angry Ales,* 2007 WL 3226451, at *5 ($1000); *Kingvision Pay–Per–View Ltd. v. Gadson,* Civ. No. 1:04–678, 2007 WL 2746780, at * 2 (M.D.N.C. Sept.18, 2007) ($10,000); *Las Reynas Restaurant,* 2007 WL 2700008, at * 3 ($2000).

*Quattrocche*, 2010 WL 2302353 at *2; *see also Melgar*, 2012 WL 1852270 at *3 (quoting *Quattrocche*); *Frank Little Enterprises, LLC*, 2012 WL 6019366 at *3 (quoting *Quattrocche*). In *Quattrocche*, Judge Nickerson noted that an investigator had "paid a $5 cover charge to enter Defendants' establishment," and that he had "counted between 60 and 61 patrons during the time he was present . . . and estimated the capacity of the establishment to be 150 people." *Id.* The plaintiff in that case failed to show what the license fee would have been for the Defendants "had they legally obtained the broadcast" in question. *Id.* In multiplying 61 patrons by the $5 cover charge, Judge Nickerson explained that "at best, the evidence shows that Defendants realized a profit of

$305.00." *Id.* Noting a lack of other evidence, the Court awarded the minimum of $1000 in statutory damages. *Id.* at *3.

Here, J&J Sports offers evidence that the Defendants would have had to pay a $2,000 fee to legally obtain and exhibit the broadcast. ECF Nos. 13-4 at 3, 13-6 at 2. On the other hand, the affidavit of investigator Jaquine Tantillo states that there was a $40.00 cover charge, and that up to 62 patrons attended the event, ECF No. 1-1, indicating a profit for the Defendants of $2,480.00.[1] This Court elects to award the greater amount of $2,480.00 in statutory damages, approximating the Defendants' profits from this event.

### B. Enhanced Damages

Section 605(e)(3)(C)(ii) provides that when "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," it has discretion to "increase the award of damages" for each violation by as much as $100,000. 47 U.S.C. § 605(e)(3)(C)(ii). "In determining whether enhanced damages are warranted, other courts in this Circuit have looked to several factors: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353 at *2.

This Court will award enhanced damages in favor of J&J Sports because there is no question that the Defendants unlawfully intercepted the fight in question and showed it "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The television broadcast of the May 2, 2009 boxing match was encrypted, *see* ECF No. 13-4, and "[s]ignals do not descramble spontaneously, nor do television sets connect

---

[1] This figure does not include potential profits from concession sales.

themselves to cable distribution systems." *Castro Corp.*, 2011 WL 5244440 at *4 (internal citation and quotation marks omitted).

"Where there are no allegations of repeat behavior or other factors suggesting egregious willfulness, Courts generally award around three to six times the statutory damages award in enhanced damages." *Id.* There are no allegations of repeat behavior or other factors suggesting egregious willfulness here. However, Defendants did charge an admission fee of $40. Thus, the Court will confer an enhanced damages award of four times the statutory damages amount, equal to $9,920.

### C. Attorneys' Fees and Costs

In its second Motion for Judgment by Default, J&J Sports "seeks recovery of its attorneys' fees and relevant costs incurred as provided pursuant to 47 U.S.C. § 605(e)(3)(B)(iii)." ECF No. 13 at 3. While this statute provides for "the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails," 47 U.S.C. § 605(e)(3)(B)(iii), J&J Sports offers no evidence "about the costs expended or reasonable attorney's fees incurred in pursuing Plaintiff's claims," *Joe Hand Promotions, Inc. v. Hanaro Bethesda, Inc.*, WGC-11-191, 2012 WL 2366378, *8 (D. Md. June 20, 2012). Accordingly, the Court will deny the Plaintiff's request for attorneys' fees and costs, *see id.*, but it will be granted fourteen days leave to file a new motion for such fees and costs with appropriate supporting documentation.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment by Default [ECF No. 13] will be granted. Judgment will be entered in favor of the Plaintiff against Defendants Tammy P. Royster and John R. Royster in the amount of $12,400. A separate Order follows.

Date: March 13, 2014

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE
